[No. B169276. Second Dist., Div. Eight. Apr. 1, 2004.]

DAVID LOUIS BEARMAN, Petitioner, v.
SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
RON JOSEPH, as Executive Director, etc., Real Party in Interest.

464

COUNSEL

Seymour Weisberg and Alison Minet Adams for Petitioner.

Catherine I. Hanson and Alice P. Mead for California Medical Association as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Bill Lockyer, Attorney General, Andrea Lynn Hoch, Chief Assistant Attorney General, Carlos Ramirez, Assistant Attorney General, Adrian K. Panton and Paul C. Ament, Deputy Attorneys General, for Real Party in Interest.

OPINION

RUBIN, J.—

## INTRODUCTION

In the course of investigating a claim that Dr. David Louis Bearman indiscriminately recommended the medicinal use of marijuana to one of his patients, the Medical Board of California (Medical Board) issued an administrative subpoena for the patient's medical records. When the patient refused to waive his right of privacy and Dr. Bearman refused to produce the records, the Medical Board obtained an order from the superior court directing Dr. Bearman to comply with the subpoena. Because the Medical Board failed to demonstrate sufficient facts to support a finding of good cause to invade the patient's right of privacy, we grant Dr. Bearman's petition for a writ of mandate and order the trial court to vacate its order enforcing the subpoena.

## FACTUAL AND PROCEDURAL BACKGROUND

Dr. Bearman is Nathan's physician.[1] On March 15, 2001, Dr. Bearman gave Nathan a letter stating, "This is a follow-up to my previous letter confirming your visit to my office on November 19, 2000, and my approval/recommendation for you of medical cannabis, this letter then certifies that you . . . are under my medical care. You reported to me that using marijuana relieves your medical symptoms of migraines and [attention deficit disorder]. I have evaluated the medical risks and benefits of cannabis use with you as a treatment pursuant to Health and Safety Code section 11362.5.[2] I recommend/approve of your use of cannabis for relief of pain and nausea of migraines and decreasing the frequency and intensity. The literature supports the medical benefit for cannabis for these symptoms. Since you benefit therapeutically, it is appropriate for you to continue to receive relief of these symptoms from cannabis. [¶] . . . I have reviewed your medical records, which document a long history of depression treated with Prozac and migraine treated with Fiornal. Based on your previous visit and review of your records, my recommendation/approval of your use of medicinal cannabis will not require a repeat visit until November or December 2001."

On April 10, 2001, Nathan and three others went to Lake Piru Recreation Area. After showing picture identification to two park rangers, Nathan and his friends consented to a vehicle inspection. Among the camping gear, the rangers found two glass smoking pipes with apparent marijuana residue. Nathan claimed ownership of the pipes and also admitted he had a small

---

[1] We use Nathan's first name only in order to give effect to his privacy interests, which we discuss *post*.

[2] All further statutory references are to the Health and Safety Code.

Section 11362.5, passed by the People of California as Proposition 215, is known as the Compassionate Use Act of 1996. Subdivision (b)(1) explains that its purposes are: "(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief. [¶] (B) *To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.* [¶] (C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." (Italics added.)

Based upon these stated purposes, subdivisions (c) and (d) provide: "(c) Notwithstanding any other provision of law, *no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.* [¶] (d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (Italics added.)

amount of marijuana in his possession. He then produced the letter from Dr. Bearman stating he was medically certified to use marijuana. After making a copy of the letter, the rangers verified that Dr. Bearman was a licensed physician and returned the pipes, marijuana, and letter to Nathan. Thinking Dr. Bearman was possibly violating the law and medical ethics by exceeding his scope of practice, one of the park rangers (Ranger James A. Just) sent a copy of Dr. Bearman's letter to the Medical Board and asked for "appropriate actions."

A month later, the Medical Board sent Nathan a letter stating it was reviewing the quality of care provided by Dr. Bearman and asking for permission to release his medical records. Nathan refused, stating it would violate his right of privacy. The Board then subpoenaed the records from Dr. Bearman. Dr. Bearman refused to comply, stating that to release Nathan's records against his patient's wishes would be a breach of physician-patient confidentiality and that the Medical Board had not shown good cause for invading such confidentiality.

The Medical Board filed a petition in the superior court to compel compliance with the subpoena under Government Code sections 11187 and 11188. On February 21, 2003, the court issued its order granting the petition and requiring Dr. Bearman to produce Nathan's medical records. The court found there were sufficient grounds to support the investigation and the subpoena because Dr. Bearman's letter appeared to prescribe marijuana for the treatment of attention deficit disorder, which is not one of the illnesses listed in section 11362.5.

After the trial court refused Dr. Bearman's request to stay enforcement of the order pending appellate review, the Medical Board commenced administrative proceedings against him claiming he continued to violate the trial court's order compelling compliance with the subpoena. Dr. Bearman then filed a petition for writ of mandate. We stayed enforcement of the trial court's order, issued an alternative writ of mandate, and heard oral argument.

## DISCUSSION

1. *The Medical Board Failed to Show "Good Cause."*

When the Medical Board seeks judicial enforcement of a subpoena for a physician's medical records, it cannot delve into an area of reasonably expected privacy simply because it wants assurance the law is not violated or a doctor is not negligent in treatment of his or her patient. (See *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669, 680

[156 Cal.Rptr. 55] (*Gherardini*).) Instead, the Medical Board must demonstrate through competent evidence that the particular records it seeks are relevant and material to its inquiry sufficient for a trial court to independently make a finding of good cause to order the materials disclosed. (*Wood v. Superior Court* (1985) 166 Cal.App.3d 1138, 1148–1149 [212 Cal.Rptr. 811] (*Wood*); see also *Gherardini*, at p. 681.) This requirement is founded in the patient's right of privacy guaranteed by article I of the California Constitution, which the physician may, and in some cases must, assert on behalf of the patient. (Evid. Code, §§ 994, 995; *Wood*, at p. 1145; see also *Gherardini*, at p. 675.)

In *Wood*, the Medical Board issued administrative subpoenas for "the complete medical records" of 52 patients under the care of two different physicians (Drs. Wood and Lin). The Medical Board suspected the physicians were over-prescribing certain "Schedule II" drugs that are regulated because of their potential for dangerous abuse. In support of the subpoenas, Medical Board investigators stated in their declarations that they had obtained copies of Drs. Wood and Lin's Schedule II drug prescriptions from various pharmacies. One investigator stated that a pharmacist had told her he believed a particular patient was receiving an excessive dose of Demerol. The declarations from the Medical Board's medical consultant stated there existed a "definite possibility of excessive prescribing of controlled drug substances" and that the medical records should be obtained to determine whether appropriate medical conditions existed to warrant the prescriptions. (*Wood, supra*, 166 Cal.App.3d at pp. 1141–1143.)

The appellate court held the trial court erred in ordering compliance with the subpoenas because the declarations "suffer from a lack of sufficient factual justification to permit the trial court to independently assess the substantiality of the likelihood of improper prescription practices" because "the root facts upon which an inference of improper prescribing is based must be laid bare." (*Wood, supra*, 166 Cal.App.3d at p. 1150; see also *Gherardini, supra*, 93 Cal.App.3d at p. 681 [" 'good cause' . . . 'calls for a factual exposition of a reasonable ground for the sought order' "].)

The court further stated, "Here we have some facts about the prescriptions and the conclusions of board personnel that they are suspicious but no mediating facts revealing why the conclusion is warranted. The board has made no evidentiary showing of how often physicians similarly-situated to petitioners might prescribe these drugs. Alternatively, the board has made no showing of the likelihood that the prescriptions could have been properly issued, given what is known of the circumstances of issuance. Absent this information the trial court has no means by which to gauge the likelihood that the records sought will reveal physician misconduct. Without this there can

be no independent judicial assessment of good cause. The *judicial* function of assessing cause [citation] cannot be abdicated by deferring to the bare conclusions of board personnel." (*Wood, supra,* 166 Cal.App.3d at p. 1150, original italics.)

In his declaration supporting the issuance of the subpoena in this case, Dr. Randolph H. Noble, the Medical Board medical consultant, stated, "This case came to the Medical Board of California as a result of a written complaint from Park Ranger James A. Just indicating that subject physician David Bearman, M.D. potentially prescribed the medical usage of marijuana to patient [Nathan] as a legal remedy rather than a medical necessity. . . . [¶] . . . [Nathan], according to the preliminary Investigation Report by Senior Investigator Linda Foster, . . . claimed to be the owner of a smoking pipe with marijuana residue and he provided Ranger Just with a letter from Dr. David Bearman medically recommending the use of marijuana for treatment of migraines and attention deficit disorder. [¶] Complainant Just states his belief that Dr. Bearman's prescription, 'may exceed his scope of practice, violate medical ethics, and be objectionable to California law.' [¶] . . . [¶] . . . Review of the Medical Marijuana statute [section 11362.5] reveals that marijuana can be used for seriously ill Californians and is to be recommended by a physician who is a primary caregiver and the indications include migraine headaches, however, there is no mention of attention deficit disorder. [¶] Unfortunately, there is no factual information without review of [Nathan's] medical records in order to determine whether Dr. Bearman's letter is legally appropriate for recommending the medical use of marijuana. . . . Dr. Bearman may be violating the law and the standard of care if he is recommending the medical use of marijuana in an indiscriminate fashion without proper indications. Therefore, the medical records of [Nathan] are requested in order to determine whether subject physician Bearman is properly recommending the medical use of marijuana and the interest of the Consumers of the State of California lies with the proper medical use of marijuana as indicated by the Medical Marijuana statute."

In her supporting declaration, Medical Board investigator Linda K. Foster said, "Good cause exists to believe that violations of the Medical Practice Act may have been committed by David Louis Bearman, M.D. In order to determine, in fact, whether said violations have occurred, it is necessary to secure the documents and material set forth on the face of the attached investigational subpoena. The facts supporting the belief that the herein described violations have occurred and the materiality of the documents requested are as follows: [¶] On April 17, 2001, the Medical Board of California received a written complaint from Park Ranger James A. Just . . . . Ranger Just also included a copy of a letter from Dr. Bearman to [Nathan] in which Dr. Bearman states he was medically certifying [Nathan] to use marijuana for treatment of migraines and Attention Deficit Disorder. [¶]

Ranger Just stated in his letter his belief that Dr. Bearman's prescription 'may exceed his scope of practice, violate medical ethics, and be objectionable to California law.' "

█ Investigator Foster quoted at length from Dr. Noble's declaration and then concluded, "In order for the Division to comply with its statutorily mandated duties . . . it is a necessary part of my investigation to obtain from Davis [*sic*] Louis Bearman, M.D., medical records associated with the medical treatment rendered to [Nathan] for the years 1999 through present. This information is not obtainable from any other source. [¶] The medical records sought by the attached subpoena are necessary and material to an investigational determination as to whether Davis [*sic*] Louis Bearman, M.D. is guilty of Gross Negligence, repeated negligent acts, incompetence or the commission of any act involving dishonesty or corruption which is substantially related to the qualifications, functions, or duties of a physician and surgeon. . . ." Based upon the standard articulated in *Wood* and *Gherardini*, we conclude the Medical Board's evidence was insufficient to show good cause to invade Nathan's right of privacy in his medical records. The declarations included no *facts* even suggesting Dr. Bearman was negligent in Nathan's treatment, that he indiscriminately recommended marijuana, the circumstances under which marijuana may arguably be prescribed for migraines or attention deficit disorder, or that Dr. Bearman in any way violated section 11362.5. The statements regarding Dr. Bearman's possible unethical conduct made by Ranger Just, Investigator Foster, and Dr. Noble are nothing more than speculations, unsupported suspicions, and conclusory statements drawn solely from Dr. Bearman's letter to Nathan and the simple fact he recommended the use of marijuana. While the Medical Board may want assurance Dr. Bearman was not violating the law or providing negligent treatment, that goal, even when accompanied by suspicion, is not enough to invade a patient's right of privacy unless there are facts from which to make an independent showing of good cause. (See *Wood, supra,* 166 Cal.App.3d at pp. 1149–1150; *Gherardini, supra,* 93 Cal.App.3d at pp. 680–681.) Those facts are simply missing in this case.

The Medical Board further contends it showed good cause because Dr. Bearman recommended marijuana for attention deficit disorder, which is not a listed illness in section 11362.5. While Dr. Noble and Investigator Foster stated in their declarations the subpoena was necessary because of this recommendation, it is clear they misread both Dr. Bearman's letter and the statute, which does not limit the use of marijuana to the listed illnesses. (See § 11362.5, subd. (b)(1)(A) ["or any other illness for which marijuana provides relief"].) In his letter, Dr. Bearman tells Nathan, "*You* reported to *me* that using marijuana relieves your medical symptoms of migraines and [attention deficit disorder]," but the letter does not expressly or impliedly recommend marijuana for attention deficit disorder. (Italics added.) The

recommendation specifically says, "I recommend/approve of your use of cannabis for relief of *pain and nausea of migraines* and decreasing the frequency and intensity. The literature supports the medical benefit for cannabis for these symptoms." (Italics added.) Thus, even assuming section 11362.5 did not extend its protection to the use of marijuana for attention deficit disorder, Dr. Bearman's letter is clear that his recommendation was limited to the relief of migraine symptoms, an illness specifically listed in section 11362.5.

In addition to concluding there was insufficient evidence for an independent finding of good cause, we also agree with amicus the California Medical Association (CMA) that the Medical Board's subpoena was impermissibly overbroad. The Medical Board is "charged with limiting its requests for records to those essential to a focused inquiry" by using "methods of discovery which winnow out records which are irrelevant and immaterial . . . . That means that the scope of the administrative warrants must be carefully tailored to avoid, if possible, the securing of improper records . . . ." (*Wood, supra,* 166 Cal.App.3d at pp. 1148–1149.) The subpoena in this case sought *all* of Nathan's records in Dr. Bearman's possession from 1999 to the present, including Nathan's prior medical records that Dr. Bearman reviewed and relied upon in making his recommendation. Such records would include those pertaining to Nathan's history and treatment of depression, and possibly attention deficit disorder, illnesses that were not covered by Dr. Bearman's marijuana recommendation. By failing to limit its inquiry to records encompassed by Dr. Bearman's recommendation—records pertaining to Nathan's migraines—the Medical Board failed to narrowly tailor its subpoena.

Finally, the Medical Board argues the trial court based its good cause determination, at least in part, on Business and Professions Code section 2225, subdivision (a), which supports the trial court's ruling because it lessens the seriousness of any privacy invasion by requiring Medical Board officials and investigators to keep patient records confidential during the course of an investigation. Subdivision (a) of that section does indeed provide that Medical Board officials and investigators "shall keep in confidence during the course of investigations, the names of any patients whose records are reviewed and may not disclose or reveal those names, except as is necessary during the course of an investigation, unless and until proceeding are instituted. . . ." Despite the fact this statute requires the Medical Board to keep patient names confidential, it does not give it license to invade a patient's constitutional right of privacy where there has been no factual justification enabling an independent assessment of good cause for disclosure. (See *Wood, supra,* 166 Cal.App.3d at pp. 1143–1149.) As we have discussed, the Medical Board failed to demonstrate such good cause in this case.

## 2. *Nathan Did Not Waive His Right of Privacy.*

Citing to cases discussing a plaintiff's waiver of the right of privacy by initiating a lawsuit, the Medical Board argues that by voluntarily showing the park rangers Dr. Bearman's letter, Nathan waived his right of privacy, and thus Nathan's medical records are discoverable. We reject this contention.

■ The Medical Board correctly observes that the filing of a lawsuit may be deemed a waiver of privacy as to matters embraced by the action. (See *Britt v. Superior Court* (1978) 20 Cal.3d 844, 849 [143 Cal.Rptr. 695, 574 P.2d 766] (*Britt*); *Vinson v. Superior Court* (1987) 43 Cal.3d 833, 842 [239 Cal.Rptr. 292, 740 P.2d 404].) But even when a plaintiff files an action that places his or her medical records at issue, waivers of constitutional rights are narrowly construed and not lightly found. (See *id.* at p. 842; *Britt,* at p. 859; *San Diego Trolley, Inc. v. Superior Court* (2001) 87 Cal.App.4th 1083, 1092 [105 Cal.Rptr.2d 476]; *Heda v. Superior Court* (1990) 225 Cal.App.3d 525, 531 [275 Cal.Rptr. 136]; see also *Wood, supra,* 166 Cal.App.3d at p. 1147 [a person's right of privacy in their medical records is fundamental because "[t]hese are matters of great sensitivity going to the core of the concerns for the privacy of information about an individual"].)

This is not a case where Nathan voluntarily initiated an action placing his medical records at issue. Instead, Nathan produced Dr. Bearman's letter as evidence that he qualified for the protection against criminal prosecution for possession of marijuana given to him by section 11362.5. As the provisions of section 11362.5 quoted above make clear, its purpose is to give patients' "the right to obtain and use marijuana for medical purposes," subject only to the requirement of a physician's recommendation, and to exempt both patients and caregivers from criminal prosecution or other penalties. (§ 11362.5, subds. (b)(1)(A) & (B), (c), (d).)[3]

Recognizing this purpose, our Supreme Court recently held that section 11362.5 grants a person limited immunity from prosecution by rendering noncriminal possession or cultivation of marijuana if that person demonstrates his status as a qualified patient. (*People v. Mower* (2002) 28 Cal.4th 457, 464 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) The court concluded, "As a

---

[3] In 2003, the Legislature passed sections 11362.7 through 11362.83, which establish a program for state-issued identification cards to patients who qualify for the medical use of marijuana. This program is, however, purely voluntary (§ 11362.71, subd. (a)(1)) and expressly provides, "It shall not be necessary for a person to obtain an identification card in order to claim the protections of Section 11362.5." (§ 11362.71, subd. (f).) These new provisions are therefore not relevant to our consideration of whether Nathan waived his right of privacy by producing Dr. Bearman's letter to prove he qualified for section 11362.5's protection.

result of the enactment of section 11362.5(d), the possession and cultivation of marijuana is no more criminal—so long as its conditions are satisfied—than the possession and acquisition of any prescription drug with a physician's prescription. Inasmuch as this statute provides that sections 11357 and 11358, which criminalize the possession and cultivation of marijuana, 'shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician' (§ 11362.5(d)), the provision renders possession and cultivation of marijuana noncriminal under the conditions specified." (*Id.* at p. 482.)

■ By showing the park rangers Dr. Bearman's letter, Nathan attempted to demonstrate that he satisfied the conditions of the statute by "possess-[ing] . . . marijuana for . . . personal medical purposes . . . [based] upon the written . . . recommendation or approval of a physician." (§ 11362.5, subd. (d).) Nowhere in the provisions of section 11362.5 is there any indication that, by demonstrating entitlement to the statute's protection, a person forgoes or waives any right, much less the "inalienable" right of privacy expressly guaranteed by the California Constitution (Cal. Const., art. I, § 1).

We agree with the CMA's argument that we would be defeating the voters' intent behind section 11362.5 if we were to adopt the Medical Board's position that a person automatically waives the right of privacy in their medical records by virtue of showing a peace officer a physician's written recommendation for the medicinal use of marijuana.[4] By passing this law, the voters intended to *facilitate* the medical use of marijuana for the seriously ill. This purpose would no doubt be defeated if, as a condition of exercising the right granted by section 11362.5, a person waived his or her right of privacy simply by producing a physician's written recommendation. Interpreting section 11362.5 as necessitating the waiver of a fundamental right in order to enjoy its protection would, we believe, hinder rather facilitate the voters' intent. We decline to interpret section 11362.5 in such a manner.[5]

■ The Medical Board finally argues the detailed nature of Dr. Bearman's letter demonstrates Nathan's voluntary waiver of his private consultations with Dr. Bearman. In other words, the Medical Board contends that because Dr. Bearman provided more detail in his letter than was necessary under the statute, Nathan waived his right of privacy by showing the letter to the park

---

[4] The CMA has filed a request that we take judicial notice of certain legislative documents concerning section 11362.5 and Senate Bill 420. Because these documents are not pertinent to our review of this case or the application of section 11362.5 we deny the request.

[5] If the Medical Board's argument is taken to its logical conclusion, then anytime a patient presents a physician's drug prescription as proof that he or she is entitled to the drug, the patient would be in danger of waiving the right of privacy in his or her medical records.

rangers. But section 11362.5 simply requires a "written or oral recommendation or approval of a physician," without specifying the amount of detail required in the recommendation. (§ 11362.5, subd. (d).)

Given this lack of specificity, we can safely assume Dr. Bearman provided the details in his letter in an attempt to help Nathan demonstrate to law enforcement that he was a qualified patient entitled to the protection afforded by section 11362.5. Those details demonstrate Dr. Bearman made his recommendation after a thorough consideration of Nathan's medical history. Even counsel for the Medical Board agreed during oral argument that if Nathan had provided a letter stating solely the fact of the recommendation he would have been detained or arrested by virtue of its lack of supporting details showing he was a qualified patient. We conclude the level of detail in Dr. Bearman's letter was appropriate and the disclosure's did not result in a voluntary waiver of Nathan's right of privacy in his medical records.

## DISPOSITION

The petition is granted. Let a peremptory writ of mandate issue, directing the trial court to: (1) vacate its February 21, 2003, order granting the Medical Board's petition and compelling compliance with the subpoena; and (2) issue a new order denying the petition.

Dr. Bearman is to recover his costs.

Cooper, P. J., and Boland, J., concurred.

A petition for a rehearing was denied May 3, 2004, and the opinion was modified to read as printed above. The petition of the real party in interest for review by the Supreme Court was denied June 30, 2004.