[No. B210868. Second Dist., Div. Six. Aug. 26, 2009.]

DAVID BEARMAN, Plaintiff and Appellant, v.
CALIFORNIA MEDICAL BOARD et al., Defendants and Respondents.

**COUNSEL**

Joseph D. Allen for Plaintiff and Appellant.

Edmund G. Brown, Jr., Attorney General, David S. Chaney, Chief Assistant Attorney General, James M. Schiavenza, Assistant Attorney General, Pamela J. Holmes and Brent W. Reden, Deputy Attorneys General, for Defendants and Respondents.

## Opinion

**YEGAN, J.**—"Public policy 'is a very unruly horse, and when you once get astride it you never know where it will carry you.'" (Leflar, Appellate Judicial Opinions (1974) p. 35, quoting *Richardson v. Mellish* (1824) 2 Bing. 252.) California public policy allows for the use of marijuana to ease the suffering of people who are seriously ill. Unfortunately, some people who are not seriously ill will attempt to ride the "unruly horse" for a recreational high. There is room for abuse of the Marijuana Compassionate Use Act of 1996 (CUA; Health & Saf. Code, § 11362.5). Here, a law enforcement officer encountered a "medical marijuana patient" who possessed marijuana and paraphernalia. He reasonably believed there might be abuse of the CUA because the doctor's letter, approving/recommending marijuana use, mentioned attention deficit disorder.[1]

A person may come within the meaning of the CUA if he or she is "seriously ill." (See *People v. Wright* (2006) 40 Cal.4th 81, 94 [51 Cal.Rptr.3d 80, 146 P.3d 531].) We do not disparage a person suffering from attention deficit disorder. We do not denigrate the symptoms of this syndrome. But, it is difficult to accept the premise that such a person is "seriously ill" within the meaning of the CUA. We would be surprised if the medical literature would support the notion that marijuana use increases a person's attention span or "provides relief" from attention deficit disorder. (Health & Saf. Code, § 11362.5, subd. (b)(1)(A).) What should the California Medical Board (Board) do if it reasonably believes there may be abuse of the CUA? Surely, it has the power and right to investigate. It should suffer no tort liability for attempting to do its job in this case.

David Bearman, M.D., appeals from a judgment of dismissal entered in favor of respondents, Board, Executive Director Ron Joseph, and Board area supervisor Laura Sweet, after the trial court sustained, without leave to amend, a demurrer to appellant's second amended complaint alleging violation of his federal civil rights. (42 U.S.C. § 1983.) We affirm because the action is barred by the doctrine of absolute immunity as to some defendants and qualified immunity as to other defendants. (*Bradley v. Medical Board* (1997) 56 Cal.App.4th 445, 454–460 [65 Cal.Rptr.2d 483].)

---

[1] Attention deficit disorder is defined as follows: "A syndrome, usually diagnosed in childhood, characterized by a persistent pattern of impulsiveness, a short attention span, and often hyperactivity, and interfering especially with academic, occupational, and social performance." (<http://medical-dictionary.thefreedictionary.com> [as of Aug. 26, 2009].)

*Facts and Procedural History*

This appeal arises from appellant's decision to approve/recommend medical marijuana. After the Court of Appeal quashed a subpoena issued by Board to review the patient's medical records (*Bearman v. Superior Court* (2004) 117 Cal.App.4th 463 [11 Cal.Rptr.3d 644] (*Bearman*)) appellant sued, claiming that this appellate victory entitled him to money damages. Respondents demurred. In sustaining the demurrer, the trial court took judicial notice of the *Bearman* opinion which recites the following facts and history:

In March 2001, appellant gave a patient, Nathan, a letter approving/recommending the use of marijuana for medical purposes pursuant to the CUA. (Health & Saf. Code, § 11362.5, subd. (b)(1)(A).)[2]

In April 2001, Nathan was stopped by a park ranger. Nathan had marijuana and two glass pipes. He claimed that he was medically certified to use marijuana and produced appellant's letter. Thinking that appellant was possibly violating the law and medical ethics, the park ranger sent a copy of the letter to Board for investigation.

In May 2001, Board requested that Nathan consent to release of his medical records to review the quality of appellant's medical care. Nathan refused on privacy grounds. Board served appellant with an administrative subpoena to review the medical records. (Gov. Code, § 11181.) Appellant refused to produce the records claiming patient privacy and physician-patient confidentiality.

In July 2002, Board filed a petition in Los Angeles Superior Court to compel compliance with the subpoena. (Gov. Code, § 11187.) The superior court granted the petition, noting that appellant's letter approved/recommended marijuana for the treatment of attention deficit disorder, an illness not mentioned in the CUA.

Appellant filed a writ petition. The Court of Appeal said that the patient did not waive his privacy rights by showing the medical marijuana letter to the

---

[2] The second amended complaint alleges that the park ranger incident occurred in 2004. The *Bearman* opinion, however, states that the incident occurred April 10, 2001. (*Bearman, supra*, 117 Cal.App.4th at p. 467.) Appellant is also estopped by his amended complaint which states that the Los Angeles County Superior Court action to enforce the subpoena was filed July 23, 2002. The dates are significant because this lawsuit may be barred by the statute of limitations. We need not, and do not, decide the appeal on this unbriefed issue.

park ranger. The letter conclusionally mentioned attention deficit disorder. It also mentioned migraine headaches and the symptoms which presumably flowed therefrom. (*Bearman, supra,* 117 Cal.App.4th at pp. 473–474.) The court concluded that Board failed to make a good cause showing for the production of medical records. It ordered the superior court to vacate its order enforcing the subpoena. (*Ibid.*)

## The Complaint

On April 6, 2006, appellant sued for damages based on a claimed violation of a federal civil rights act. (42 U.S.C. § 1983.) The second amended complaint alleged that Board, Board Executive Director Ron Joseph, and Board area supervisor Laura Sweet, as a matter of custom and practice, brought "baseless subpoenas [and] unfounded administrative and disciplinary proceedings" to frighten and intimidate doctors who recommend the medical use of marijuana for patients.

## Absolute Immunity

In his opening brief, appellant concedes that Board and Board Executive Director Ron Joseph have absolute immunity. (See *Bradley v. Medical Board, supra,* 56 Cal.App.4th at p. 454, fn. 7 [absolute prosecutorial immunity]; *Mishler v. Clift* (9th Cir. 1999) 191 F.3d 998, 1007–1008 [state medical board and officers enjoy absolute immunity].) It is settled that a civil rights complaint may be dismissed on demurrer where the defendant has absolute or qualified immunity. (*Mobley v. Los Angeles Unified School Dist.* (2001) 90 Cal.App.4th 1221, 1238–1239 [109 Cal.Rptr.2d 591].)

## Qualified Immunity—Unnamed Defendants

Immunity from liability under section 1983 of the federal civil rights act (42 U.S.C.) is governed by federal, not state, law. (*Pitts v. County of Kern* (1998) 17 Cal.4th 340, 349–350 [70 Cal.Rptr.2d 823, 949 P.2d 920].) "For executive officials in general, . . . qualified immunity represents the norm." (*Harlow v. Fitzgerald* (1982) 457 U.S. 800, 807 [73 L.Ed.2d 396, 102 S.Ct. 2727, 2732].)

"Unlike absolute immunity, which shields the defendant no matter how egregious or intentional the conduct, qualified immunity shields only that conduct of a governmental official which he or she reasonably believed to be lawful in light of the clearly established law and facts of the case.

[Citation.]" (*Gensburg v. Miller* (1994) 31 Cal.App.4th 512, 519, fn. 2 [37 Cal.Rptr.2d 97].)

Appellant claims that Board investigator Linda K. Foster violated his civil rights. The *Bearman* opinion states that she conducted a preliminary investigation of the park ranger complaint and signed a declaration supporting issuance of the administrative subpoena. (*Bearman, supra*, 117 Cal.App.4th at pp. 470–471.) Foster is not a named defendant, a party to the appeal, or even mentioned in the second amended complaint. We need not decide whether Foster enjoys a qualified immunity.

### *Qualified Immunity—Supervisor Sweet*

The second amended complaint alleges that Board agents, acting under the direction and supervision of Board area supervisor Laura Sweet (supervisor), "contacted Patient Nathan and asked him, through a Board investigator, to consent to the Board copying and reviewing his medical records . . . ." It further states that "RON JOSEPH, Executive Director of the MEDICAL BOARD, issued through staff including defendant SWEET, a subpoena to Plaintiff for all records pertaining to Patient Nathan."

■ As discussed in *Bradley v. Medical Board, supra*, 56 Cal.App.4th at pages 457–458, "Board is statutorily required to investigate complaints from the public 'that a physician . . . may be guilty of unprofessional conduct' (Bus. & Prof. Code, § 2220, subd. (a)), which includes '[p]rescribing . . . dangerous drugs . . . without a good faith prior examination and medical indication therefor . . . .' (Bus. & Prof. Code, § 2242, subd. (a).) Board investigators 'have the authority of peace officers while engaged in exercising the powers granted or performing the duties imposed upon them . . . in investigating the laws . . . .' "

■ In determining whether supervisor has qualified immunity, we "undertake a two-step analysis: '(1) Was the law *governing the official's conduct* clearly established? (2) Under that law, could a reasonable officer have believed the conduct was lawful?' [Citation.]" (*Bradley v. Medical Board, supra*, 56 Cal.App.4th at p. 456.) To avoid the qualified immunity defense, appellant must show that supervisor's conduct "violate[d] clearly established statutory or constitutional rights of which a reasonable person would have known. [Citations.]" (*Harlow v. Fitzgerald, supra*, 457 U.S. 800, 818 [73 L.Ed.2d 396, 410].) ■ Notwithstanding the passage of the CUA, it remains a federal crime to possess marijuana. There is no federal exemption for medical marijuana. (*County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 811–812 [81 Cal.Rptr.3d 461].) This serves as a basis to say

that any state law purporting to "legalize" marijuana, even for medical purposes, is not "clearly established."

■ No facts are alleged that supervisor disregarded clearly established law in asking the patient to consent to release of the medical records or in directing Board investigators to issue the subpoena. The investigation was based on a park ranger report that appellant might be violating the law. (*Bearman, supra*, 117 Cal.App.4th at p. 470.) A Board medical consultant, after reviewing the medical marijuana letter and park ranger report, opined that a subpoena was required to determine whether appellant was violating the law and applicable standard of care in recommending the medical use of marijuana. (*Ibid.*) The Los Angeles Superior Court found good cause to produce the medical records.

■ The Court of Appeal reversed. Before *Bearman*, it was unclear (and it is still unclear) whether a physician may lawfully recommend the medical use of marijuana for attention deficit disorder. (*Bearman, supra*, 117 Cal.App.4th at p. 471.) It was also unknown how detailed the physician letter had to be without waiving the privacy rights of the patient. (*Id.*, at p. 474.) To clarify the law, the Legislature enacted Health and Safety Code section 11362.71 to establish a program for state-issued identification cards to patients who qualify for the medical use of marijuana. (*Bearman, supra*, 117 Cal.App.4th at p. 473, fn. 3.)

■ Appellant alleges no facts that a reasonable public official, prior to the decision in *Bearman*, would have believed that issuance of the administrative subpoena under the facts presented violated a clearly established statutory or constitutional right. (*Bradley v. Medical Board, supra*, 56 Cal.App.4th at p. 456.) "A government official is entitled to qualified immunity even where reasonable officers may disagree as to his or her conduct, as long as the conclusion is objectively reasonable. [Citation.]" (*Id.*, at pp. 456–457.) Here, the conduct was objectively reasonable.

Finally, we address a claim made at oral argument. Appellant argued that the *Bearman* opinion has some "preclusive effect" because the justices read the letter to Nathan as only relying on the migraine symptoms to justify the use of medical marijuana. (*Bearman, supra*, 117 Cal.App.4th at pp. 471–472.) It is one thing for justices of the Court of Appeal, in the quiet of chambers, to rule on whether or not a subpoena for medical records should be quashed or not. It is quite another thing for a Board agent to investigate a possible violation of the CUA when the physician mentions attention deficit disorder in his approval/recommendation letter. The Court of Appeal opinion has no "preclusive effect" on the outcome of the present appeal.

## Conclusion

We do not even opine whether there has been an abuse of the CUA in this case. But, in theory, there is room for abuse of the CUA in this emerging area of the law. Here the Board and its agents were trying to follow the statutory mandate. They have no tort liability for doing so.

The judgment is affirmed. Respondents are awarded costs on appeal.

Gilbert, P. J., and Perren, J., concurred.

A petition for a rehearing was denied September 21, 2009, and appellant's petition for review by the Supreme Court was denied November 10, 2009, S176979.