Filed 1/21/14  (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LINDA K. WHITNEY, as Executive Director, etc.,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>WALTON MONTEGUT,<br><br>　　Defendant and Appellant. | No. B241755<br><br>(L.A. Super. Ct. No. BS132656)<br><br><br>**ORDER MODIFYING OPINION**<br>**[NO CHANGE IN JUDGMENT]** |

It is ordered that the opinion filed herein on January 6, 2014, and certified for publication, be modified as follows:

On the title page, the last paragraph listing counsel for Plaintiff and Respondent, please add Kathleen A. Kenealy, Chief Assistant Attorney General, in place of Dane R. Gillette, Chief Assistant Attorney General, so the paragraph reads:

Kamala D. Harris, Attorney General, Kathleen A. Kenealy, Chief Assistant Attorney General, Gloria L. Castro, Senior Assistant Attorney General, and Cindy M. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

There is no change in the judgment.

_____

TURNER, P. J.　　　　　　　　　　　　　　　　　　　　　　　　KRIEGLER, J.

Filed 1/6/14 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| LINDA K. WHITNEY, as Executive Director, etc., | B241755 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BS132656) |
| v. | |
| WALTON MONTEGUT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Diedre H. Hill, Judge.  Affirmed.

Iungerich & Spackman and Russell Iungerich for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gloria L. Castro, Senior Assistant Attorney General, Robert McKim Bell, Supervising Deputy Attorney General, Cindy M. Lopez, Deputy Attorney General, for Plaintiff and Respondent.

_____

Linda K. Whitney, Executive Director of the Medical Board of California (the Board), filed a petition to compel Walter Montegut, M.D., to comply with investigational subpoenas (the subpoenas) issued in connection with an investigation of a complaint that Dr. Montegut "may be abusing drugs, prescribing to himself and over prescribing to patients." Over various objections, the trial court granted the petition.

Dr. Montegut contends the trial court erred in granting the petition because: (1) it was not timely filed within 60 days of his noncompliance with the subpoenas; (2) the Los Angeles County Superior Court did not have jurisdiction to hear the petition under Government Code section 11186;[1] (3) the subpoenas were illegal because they were not supported by written patient releases; and (4) the subpoenas did not set forth legally adequate cause for enforcement. We affirm.

**Allegations of the Petition and Supporting Documents**

The petition was filed in Los Angeles County Superior Court on June 27, 2011, seeking medical records of ten patients treated by Dr. Montegut, pursuant to the Board's disciplinary and investigative authority over licensed physicians. The petition was supported by a declaration of Dr. Rick Chavez, a physician with board certification in addiction medicine and pain medicine, who reviewed prescriptions issued by Dr. Montegut that revealed possible drug use and over prescribing to patients. Dr. Chavez opined that he needs to review the patients' medical records to determine why the medications were prescribed. The petition alleged the Board's investigation was being conducted in Los Angeles County and the designated place of compliance with the subpoenas was in Los Angeles County (although the subpoena attached to the petition required production of patient records in Tustin, which is in Orange County). Counsel for Dr. Montegut notified the Board's investigator, Erika George, on January 26, 2011, of objections to the subpoenas and the doctor's refusal to comply.

---

[1] Statutory references are to the Government Code unless otherwise indicated.

The Board filed a memorandum of points and authorities concurrently with the petition. The memorandum detailed the nature of the investigation, the authority of the Board to investigate, and the necessity to enforce the subpoenas.

**Proceedings on the Petition**

Dr. Montegut filed objections to the petition on substantive, procedural, and jurisdictional grounds, as discussed below. The trial court issued an order to show cause, rejected each of Dr. Montegut's objections, and on May 10, 2012, the court signed an order compelling Dr. Montegut to comply with the subpoenas. Dr. Montegut filed a timely notice of appeal from the order.

## DISCUSSION

## I

Dr. Montegut's first contention is that the petition to compel compliance with the subpoenas is subject to the same 60-day time limit applicable to a petition for writ of mandate. Because he refused to comply by January 27, 2011,[2] Dr. Montegut reasons the Board had to file the petition no later than March 28, 2011, and the June 27, 2011 filing was beyond the applicable limitations period.

Dr. Montegut cites no authority for the proposition that a petition to compel compliance with an investigational subpoena is the equivalent of a petition for writ of mandate which must be filed within 60 days of the party's failure to comply, nor does he engage in any analysis to support that conclusion. "We need not address arguments for which a party provides no supporting authority. (*People v. Williams* (1997) 16 Cal.4th 153, 226, fn. 6.)" (*Michael P. v. Superior Court* (2001) 92 Cal.App.4th 1036, 1042.)

[2] Dr. Montegut's letter, refusing to comply with the subpoenas, was dated January 26, 2011.

In any event, the trial court correctly ruled that a petition to compel compliance with a subpoena "is not a petition for writ of mandate; therefore the 60-day statute does not apply." The Board is empowered to issue investigative subpoenas for the purpose of investigating physician conduct. (Bus. & Prof. Code, § 2220; § 11181, subd. (e).) The power to enforce compliance with investigational subpoenas is found in section 11187,[3]

---

[3] Section 11187 provides as follows: "(a) Except as provided in subdivision (c), if any witness refuses to answer any interrogatory or to attend or testify or produce or permit the inspection or copying of any papers or other items described in subdivision (e) of Section 11181 required by subpoena, the head of the department may petition the superior court in the county in which the hearing or investigation is pending or the county in which testimony is designated in the subpoena to be given or documents or other items are designated in the subpoena to be produced, for an order compelling the person to answer the interrogatories or to attend and testify or produce and permit the inspection and copying of the papers or other items required by the subpoena before the officer named in the subpoena.

"(b) The petition shall set forth all of the following:

"(1) That due notice of the time and place for answering the interrogatories or testifying or the attendance of the person or the production of the papers or other items described in subdivision (e) of Section 11181 was given.

"(2) That the person was subpoenaed or required to answer interrogatories in the manner prescribed in this article.

"(3) That the person failed and refused to answer the interrogatories or to attend or testify or produce or permit the inspection or copying of the papers or other items required by subpoena before the officer in the cause or proceeding named in the subpoena, or has refused to answer questions propounded to him or her in the course of the investigation or hearing.

"(c) If the witness named in the subpoena does not reside or conduct business in this state, the department head may seek to compel the witness' testimony and production, inspection, and copying of documents or other items described in subdivision (e) of Section 11181 in the manner provided for the enforcement of a deposition notice to a nonparty as described in Section 2026.010 or 2027.010 of the Code of Civil Procedure or in any other manner authorized by any law.

which expressly sets forth the requirements of the petition.  Section 11187 does not contain a 60-day period of limitations, nor does it suggest in any fashion that a petition to compel compliance with a subpoena is the equivalent of a petition for writ of mandate. The petition in this case was not untimely.

II

Dr. Montegut next argues the Los Angeles County Superior Court did not have jurisdiction to hear the petition.  He contends jurisdiction in this case is in the Orange County Superior Court under the provisions of section 11186, because the subpoenas called for compliance in Orange County and there is no evidence that any investigation of Dr. Montegut was taking place in Los Angeles County.  This contention involves issues of statutory interpretation and application of the substantial evidence rule to the trial court's findings on jurisdiction.

**A.  *Standards of Review***

"Appellate courts review statutory interpretations de novo.  (*Be v. Western Truck Exchange* (1997) 55 Cal.App.4th 1139, 1143.)"  (*California Teachers' Assn. v. Governing Bd. of Hilmar Unified School Dist.* (2002) 95 Cal.App.4th 183, 190.)  "Our fundamental task in construing a statute is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute.  (*Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 777.)  We begin by examining the statutory language, giving the words their usual and ordinary meaning.  (*People v. Lawrence* (2000) 24 Cal.4th 219,

---

"(d)  If any witness objects and based on that objection refuses to answer any interrogatory or to attend or testify or produce or permit the inspection or copying of any papers or other items described in subdivision (e) of Section 11181 as required by a subpoena, the witness shall state the objection and the validity of the objection shall be determined exclusively in a proceeding brought by the head of the department to compel compliance as provided in this section."

230.) If there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs. (*Id.* at pp. 230-231; *People v. Coronado* (1995) 12 Cal.4th 145, 151.)" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)

"'When a trial court's factual determination is attacked on the ground that there is no substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with the determination as to whether, *on the entire record,* there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court. *If such substantial evidence be found, it is of no consequence that the trial court believing other evidence, or drawing other reasonable inferences, might have reached a contrary conclusion.*' (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874.) The substantial evidence standard of review is applicable to appeals from both jury and nonjury trials. (*Alderson v. Alderson* (1986) 180 Cal.App.3d 450, 465.)" (*Jameson v. Five Feet Restaurant, Inc.* (2003) 107 Cal.App.4th 138, 143.)

## B. *Interpretation of Section 11186*

The statute assigning jurisdiction to hear petitions to compel compliance with investigational subpoenas is section 11186, which provides as follows: "The superior court in the county in which any hearing is held or any investigation is conducted under the direction of the head of a department or the county in which testimony is designated to be given or documents or other items are designated to be produced, has jurisdiction to compel the attendance of witnesses, the giving of testimony, the answering without objection of interrogatories, and the production, inspection, and copying of papers, books, accounts, documents, and other items described in subdivision (e) of Section 11181 as required by any subpoena issued by the department head."

Section 11186 unambiguously defines the trial court's jurisdiction to hear a petition to compel compliance with an investigational subpoena in three distinct ways.

The petition may be filed in: (1) "the county in which any hearing is held"; (2) "the county in which . . . any investigation is conducted under the direction of the head of a department"; and (3) "the county in which testimony is designated to be given or documents or other items are designated to be produced." Jurisdiction is therefore not limited to Orange County, even though that county was the location for compliance with the subpoenas.

### C. *Substantial Evidence*

The trial court found that the Los Angeles County Superior Court has jurisdiction over the petition because (1) the hearing on Dr. Montegut's interim suspension was held in Los Angeles, (2) if an accusation is filed, it will be in Los Angeles, and (3) investigation was conducted in both Orange and Los Angeles Counties. Under the appropriate standard of review, the issue is not close, as the court's jurisdictional findings are amply supported by substantial evidence.

First, the deputy attorney general acting as counsel for the Board declared that a hearing had been held in October 2010 in the Los Angeles Office of Administrative Hearings regarding interim suspension of Dr. Montegut's medical license. This sworn statement is uncontroverted. Thus, in direct relation to the investigation of Dr. Montegut, Los Angeles was "the county in which *any hearing* is held." (§ 11186, italics added.) The broad jurisdictional language used by the Legislature, including the phrase "any hearing," does not support the interpretation urged by Dr. Montegut, that "any hearing" means a hearing that is currently pending. Had the Legislature intended the meaning of section 11186 suggested by Dr. Montegut, it would have provided for jurisdiction in the county "in which any hearing is pending." The Legislature did not use those words, and we decline to add them to section 11186 and thereby limit the broad jurisdictional language chosen by the Legislature. The hearing on interim suspension, alone, is an adequate basis for jurisdiction in the Los Angeles County Superior Court.

The trial court also ruled that jurisdiction was proper under section 11186 because if an accusation is filed, any hearing will also be heard in Los Angeles County at the Office of Administrative Hearings. We leave for another day the issue of whether a future hearing satisfies the jurisdictional requirement of the statute. It is sufficient for purposes of this case to hold, as we have above, that the prior hearing on interim suspension of Dr. Montegut vests the Los Angeles County Superior Court with jurisdiction to hear the petition to compel compliance with the subpoenas.

Second, the record contains substantial evidence to support the trial court's finding that "the investigation has been conducted in both Orange County and Los Angeles County." Because the court did not specify the evidence upon which it relied, we examine the entire record and draw all inferences in favor of the court's express or implied findings under the substantial evidence rule. We begin by noting that the petition, which is deemed verified under the terms of Code of Civil Procedure section 446 (see *Murrieta Valley Unified School Dist. v. County of Riverside* (1991) 228 Cal.App.3d 1212, 1222-1223), specifically alleged that "the Board's investigation is being conducted in Los Angeles County."

The Board's counsel explained in a declaration that she was "*assigned to investigate* allegations of misconduct" (italics added) against Dr. Montegut in June 2010, and that she "direct[ed] the investigation of this case from [her] office in Los Angeles." Pursuant to section 12529.6,[4] counsel worked in conjunction with Investigator George,

---

[4] Section 12529.6 provides in part as follows: "(a) The Legislature finds and declares that the Medical Board of California, by ensuring the quality and safety of medical care, performs one of the most critical functions of state government. Because of the critical importance of the board's public health and safety function, the complexity of cases involving alleged misconduct by physicians and surgeons, and the evidentiary burden in the board's disciplinary cases, the Legislature finds and declares that using a vertical enforcement and prosecution model for those investigations is in the best interests of the people of California.

"(b) Notwithstanding any other provision of law, as of January 1, 2006, each complaint that is referred to a district office of the board for investigation shall be simultaneously and jointly assigned to an investigator and to the deputy attorney general in the Health

who was located in Orange County, using a vertical enforcement and prosecution model. Part of counsel's responsibilities include interviewing witnesses, researching applicable case law, making phone calls, filing the petition for interim suspension, and enforcement of investigational subpoenas. Counsel's declaration constitutes substantial evidence that investigation was conducted in Los Angeles County.

Additional definitive proof that "any investigation" took place in Los Angeles County is found in the involvement of Dr. Chavez. It is undisputed that Dr. Chavez was utilized by the Board to investigate Dr. Montegut's prescribing practices, and after his investigation of the prescriptions, the irregularities he observed caused him to conclude it was necessary to review the patients' medical records that are the subject of the instant petition. Dr. Chavez has medical privileges at two Los Angeles County hospitals, and most importantly, signed his declaration in Redondo Beach, which is located in Los Angeles County. The trial court could reasonably infer from the record that counsel for the Board directed and participated in the investigation, Dr. Chavez was an integral part of that investigation, and their activity took place in Los Angeles County. The court correctly found it had jurisdiction.

## III

Citing Business and Professions Code section 2225.5, subdivision (a)(1), Dr. Montegut contends the subpoena was illegal because it was not accompanied by written patient releases. He further argues the letters notifying the ten patients of the subpoena of

---

Quality Enforcement Section responsible for prosecuting the case if the investigation results in the filing of an accusation. The joint assignment of the investigator and the deputy attorney general shall exist for the duration of the disciplinary matter. During the assignment, the investigator so assigned shall, under the direction but not the supervision of the deputy attorney general, be responsible for obtaining the evidence required to permit the Attorney General to advise the board on legal matters such as whether the board should file a formal accusation, dismiss the complaint for a lack of evidence required to meet the applicable burden of proof, or take other appropriate legal action."

their records from Dr. Montegut were insufficient because they "did not specify a court or administrative officer because (*sic*) whom objections could be made. They merely state that the patients should consider consulting an attorney." Dr. Montegut also relies on Code of Civil Procedure section 1985.3, as applied in *Sehlmeyer v. Department of General Services* (1993) 17 Cal.App.4th 1072, 1076, footnote 3 (*Sehlmeyer*), for the proposition that a physician may refuse to comply with a subpoena for patient records if the notice to the patient fails to identify where the patient may file objections to disclosure of their records.

Business and Professions Code section 2225.5, subdivision (a)(1),[5] has no application in this case. The statute is a penalty provision that applies to a physician who refuses to comply with a subpoena for medical records after the patient has provided written consent. Here, the ten patients in question have not provided written consent. Dr. Montegut is not being penalized for failing to comply with the subpoenas as to consenting patients. This case concerns compliance with the subpoenas after the patients have failed to provide consent, not the penalty for noncompliance where there is patient consent.

We next turn to Dr. Montegut's contention regarding Code of Civil Procedure section 1985.3, subdivision (e),[6] which describes the required written notice to a patient

---

[5] Business and Professions Code section 2225.5 provides in pertinent part as follows: "(a)(1) A licensee who fails or refuses to comply with a request for the certified medical records of a patient, that is accompanied by that patient's written authorization for release of records to the board, within 15 days of receiving the request and authorization, shall pay to the board a civil penalty of one thousand dollars ($1,000) per day for each day that the documents have not been produced after the 15th day, up to ten thousand dollars ($10,000), unless the licensee is unable to provide the documents within this time period for good cause."

[6] Subdivision (e) of Code of Civil Procedure section 1985.3 provides as follows: "(e) Every copy of the subpoena duces tecum and affidavit, if any, served on a consumer or his or her attorney in accordance with subdivision (b) shall be accompanied by a notice, in a typeface designed to call attention to the notice, indicating that (1) records about the consumer are being sought from the witness named on the subpoena; (2) if the consumer objects to the witness furnishing the records to the party seeking the records,

that a subpoena has been issued for the patient's medical records. First, the patient must be given notice that records about the patient are being sought from the witness named on the subpoena. The notices to each patient here included a cover letter from Investigator George stating that she had made an earlier written request to authorize release of the medical records held by Dr. Montegut, but the patient had not responded. The letter included the following language: "I am writing to inform you that: THE MEDICAL BOARD IS ATTEMPTING TO OBTAIN YOUR MEDICAL RECORDS FROM DR. MONTEGUT VIA SERVICE OF A SUBPOENA." Investigator George's letter was accompanied by a copy of the subpoena and a "NOTICE TO MEDICAL CONSUMERS" that identified the patients' rights. Investigator George's letter and the supporting documents satisfied the first notice requirement of Code of Civil Procedure section 1985.3.

The second requirement of Code of Civil Procedure section 1985.3 is notice to the patient that if he or she objects to disclosure of his or her medical records, the patient must file papers with the court or serve a written objection prior to the date specified for production. Here, each patient received a document entitled "NOTICE TO MEDICAL CONSUMERS," explaining the Board's duties and investigative powers and seeking the patients signature on an authorization to release of their medical records. The patients were advised of their right not to sign the consent form, but that the Board will take the necessary steps to subpoena the records. Patients were advised, "YOU HAVE THE RIGHT TO OBJECT TO PRODUTION OF YOUR RECORDS TO THE MEDICAL BOARD IN RESPONSE TO ITS SUBPOENA." Investigator George's letter to each patient included the same admonition. The second notice requirement of Code of Civil Procedure section 1985.3 was satisfied.

---

the consumer must file papers with the court or serve a written objection as provided in subdivision (g) prior to the date specified for production on the subpoena; and (3) if the party who is seeking the records will not agree in writing to cancel or limit the subpoena, an attorney should be consulted about the consumer's interest in protecting his or her rights of privacy. If a notice of taking of deposition is also served, that other notice may be set forth in a single document with the notice required by this subdivision."

The third notice requirement is that if the parties do not agree in writing to cancel or limit the subpoena, the patient should consult an attorney about protecting the patient's privacy rights. The "NOTICE TO MEDICAL CONSUMERS" provided to each patient in this case included the following admonition: "IF YOU WISH TO MAKE SUCH AN OBJECTION, YOU MAY WANT TO CONSULT AN ATTORNEY TO DISCUSS YOUR RIGHTS." Investigator George's letter to each patient contained the same admonition. The third statutory notice requirement was satisfied.

Dr. Montegut contends there is an additional notice requirement under Code of Civil Procedure section 1985.3 that the Board did not satisfy—notice advising the patient in which court, or before which tribunal, an objection could be made. Code of Civil Procedure section 1985.3 contains no such requirement, and we decline to impose one. *Sehlmeyer*, *supra*, 17 Cal.App.4th 1072, cited by Dr. Montegut, does not hold that Code of Civil Procedure section 1985.3 requires a patient be given notice of where to object. The case stands for the unremarkable proposition that a patient must be given advance notice of a subpoena of medical records under Code of Civil Procedure section 1985.3. (*Sehlmeyer, supra,* at pp. 1079-1082.) The Board provided the precise notice required by the statute in this case.

**IV**

Dr. Montegut's final contention is that the subpoena did not set forth legally adequate cause for its enforcement. Relying on *Wood v. Superior Court* (1985) 166 Cal.App.3d 1138, 1148-1149 (*Wood*), Dr. Montegut argues the declaration of Dr. Chavez fails to support a finding overriding a patient's privacy rights because (1) Dr. Chavez is not a member of the same medical specialty as Dr. Montegut, and (2) Dr. Chavez's conclusion that "[i]t is not possible to ascertain with assurance why these medications were prescribed" is legally insufficient for enforcement of an investigational subpoena.

**A.** *Qualifications and Sufficiency of the Opinion of Dr. Chavez*

Dr. Chavez declared he is board certified in Addiction Medicine, Pain Medicine, and Family Medicine. He earned his undergraduate degree in psychology at Stanford University and his medical degree at the UCLA School of Medicine, where he has been a clinical assistant professor since 1992. He was on the faculty at the USC School of Medicine from 1987-1992. His current clinical practice is in the treatment of chronic pain and addiction medicine. He has clinical and admission privileges at Torrance Memorial Medical Center and Little Company of Mary Hospital in Torrance.

In July 2010, Dr. Chavez was asked to review allegations of drug use and over prescribing by Dr. Montegut. One of the documents he reviewed was a CURES report,[7] which revealed significant irregularities in Dr. Montegut's prescribing practices. Large quantities of Phentermine were prescribed to one patient. Patients were receiving the same prescription on the same day, in the same quantities, at two different pharmacies. Multiple family members were receiving the same medication and refilling before the due date. Dr. Montegut is a plastic surgeon, and Dr. Chavez opined "it seems unusual for someone in his specialty to prescribe these kinds drugs in these high amounts." Such behavior "is consistent with medication abuse, misuse or diversion. It is difficult to ascertain why these medications were prescribed without seeing the medical records for the patients." In Dr. Chavez's professional opinion, "there is good reason for the necessity to review the medical records of the patients in question. In order to accurately determine and define these problems, certified medical records are necessary."

The trial court's determination that a physician is qualified to render testimony as "an expert witness must be upheld absent an abuse of discretion, which will be found only where the evidence shows that a witness clearly lacks qualification as an expert.

---

[7] "CURES" is an acronym for the California Department of Justice Controlled Substance Utilization Review and Evaluation System, established by Health and Safety Code section 11165 for the purpose of assisting law enforcement and regulatory agencies in their efforts to control the diversion and abuse of controlled substances.

(*People v. Chavez* (1985) 39 Cal.3d 823, 828.)"  (*Jutzi v. County of Los Angeles* (1987) 196 Cal.App.3d 637, 653.)

Dr. Montegut argues that Dr. Chavez is unqualified to render the opinion that the CURES report showed irregularities in Dr. Montegut's prescribing practice, on the ground that Dr. Chavez is not a plastic surgeon.  We reject the argument.  Dr. Chavez did not express an opinion on how Dr. Montegut performed plastic surgery.  He did express an uncontroverted opinion, within his area of expertise of addiction and pain medicine, regarding the irregularities shown in Dr. Montegut's prescriptions in the CURES report.  Those irregularities included prescriptions for large quantities of Phentermine to one patient, patients receiving the same medication at different pharmacies on the same day, and multiple family members receiving the same medication, "refilling before the due date."  Given Dr. Chavez's training, education, and experience, the trial court did not abuse its discretion in relying on his expert opinion that there were significant irregularities in Dr. Montegut's prescribing practices that necessitated further review of patient records.

## B.  *Adequacy of Dr. Chavez's Opinion to Support the Subpoenas*

Dr. Montegut argues that Dr. Chavez's declaration is insufficient as a matter of law to provide an adequate basis for an investigational subpoena based on his conclusion that "[i]t is not possible to ascertain with assurance why these medications were prescribed."  Dr. Montegut argues *Wood*, *supra*, 166 Cal.App.3d 1138 "is directly on point in this case."  The *Wood* court found insufficient evidence to support an order compelling a doctor to comply with investigational subpoenas where the Board's expert expressed the opinion examination of patient records was necessary "'because of the definite possibility of excessive prescribing of controlled drug substances . . . .'"  (*Id.* at p. 1142.)

*Wood* involved administrative subpoenas directed to two physicians for the complete medical records of patients who had been prescribed Schedule II controlled

substances.  When the physicians refused to comply with the subpoenas, the Board obtained a trial court order enforcing compliance.  The Court of Appeal granted a peremptory writ of mandate overturning the order to comply.  (*Wood*, *supra*, 166 Cal.App.3d at pp. 1140-1141.)  The *Wood* court based its conclusion that the subpoenas should not have been enforced on the following factors:  (1)  a patient's right to privacy prohibited inspection of medical records in the absence of a compelling state interest (*id.* at p. 1147); (2)  the right to privacy could only be protected if the Board takes reasonable steps to notify the patient of the subpoena (*id.* at p. 1149); (3)  if the patient does not waive the privacy right, the Board must "provide competent evidence that permits the trial court to make an independent finding of good cause," for review of the complete medical records of the patient (*ibid.*); and (4)  "If the trial court is to make the decision of reasonable cause other than as a rubber stamp the root facts upon which an inference of improper prescribing is based must be laid bare" (*id.* at p. 1150).  Based upon deficiencies in these four categories, the appellate court held there was "no independent judicial assessment of good cause" and the "*judicial* function of assessing cause [citation] cannot be abdicated by deferring to the bare conclusion of board personnel."  (*Ibid.*)

The problems with the subpoenas before the court in *Wood* are not present in the instant case.  *Wood*'s conclusion that a compelling state interest is required to overcome the right to privacy predated our Supreme Court's opinion in *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1 (*Hill*), which rejected that interpretation of the right to privacy in article I, section 1, of the California Constitution.[8]  "Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest.  Legitimate interests derive from the legally authorized and socially beneficial activities of government and private entities.  Their relative importance is determined by their proximity to the central functions of a particular public

---

[8]  Article I, section 1 of the California Constitution provides as follows:  "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy."

or private enterprise.  Conduct alleged to be an invasion of privacy is to be evaluated based on the extent to which it furthers legitimate and important competing interests. [Citation.]" (*Id.* at p. 38.)  The trial court here made a thorough analysis of the competing interests in this case, and other than challenging the adequacy of Dr. Chavez's declaration, Dr. Montegut makes no argument the court erred in its analysis of competing interests as defined in *Hill*.

The second issue identified in *Wood*—the absence of notice to the patients—is not a factor in this case.  It is uncontested that the patients were given the opportunity to consent to disclosure of their records, and when consent was not given, the patients received notice of the subpoena and their right to consult with counsel and object to the subpoena.  As noted by the trial court, the patients are protected by section 11183,[9] which prohibits disclosure of records seized pursuant to an investigational subpoena.

The third requirement of *Wood*—the Board's obligation to present competent evidence which supports the trial court's finding of good cause for enforcement of the subpoena—is satisfied by Dr. Chavez's declaration.  We do not agree with Dr. Montegut's argument that Dr. Chavez's declaration is "insufficient because it does not set forth information sufficient for this Court independently to assess the likelihood of improper prescribing."  Dr. Chavez examined the Department of Justice's official CURES report and pointed out specific examples of prescribing irregularities.  He identified large quantities of one controlled substance prescribed to one patient.  He described patients receiving the same prescription on the same day and obtaining the

---

[9] Section 11183 provides as follows:  "Except in a report to the head of the department or when called upon to testify in any court or proceeding at law or as provided in Section 11180.5 or subdivisions (g) and (h) of Section 11181, an officer shall not divulge any information or evidence acquired by the officer from the interrogatory answers or subpoenaed private books, documents, papers, or other items described in subdivision (e) of Section 11181 of any person while acting or claiming to act under any authorization pursuant to this article, in respect to the confidential or private transactions, property or business of any person.  An officer who divulges information or evidence in violation of this section is guilty of a misdemeanor and disqualified from acting in any official capacity in the department."

same quantities at two different pharmacies. Multiple family members were receiving the same medication and refilling before the due date. Dr. Chavez's declaration presents competent and specific evidence of identifiable instances "of significant irregularities in [Dr. Montegut's] prescribing practices" that warranted examination of the patients' medical records. Omitted from Dr. Montegut's description of Dr. Chavez's declaration is Dr. Chavez's further statements of good cause: "In my professional opinion, there is good reason for necessity to review the medical records of the patients in question. In order to accurately determine and define these problems, certified medical records are necessary." We further observe that here, unlike the situation in *Wood*, *supra*, 166 Cal.App.3d at pages 1142-1143,[10] where both doctors submitted declarations to contradict the Board's expert, Dr. Montegut offers no explanation for why the prescriptions identified by Dr. Chavez were medically justifiable.[11]

Fourth, and finally, the trial court's decision-making process in this case cannot be characterized as "a rubber stamp" of the Board's actions that abdicated the judicial function. The court cautiously proceeded on the petition, assuring that both sides had fair opportunity to file written pleadings and objections, with oral argument on all the issues presented. Although Dr. Chavez's declaration was uncontroverted, the court's three-page ruling demonstrates the careful judicial analysis of competing interests contemplated by *Wood*.

---

[10] Dr. Montegut also relies on *Bearman v. Superior Court* (2004) 117 Cal.App.4th 463, 471, which found an absence of good cause for disclosure of patient files based on speculative and conclusory declarations that included no facts suggesting the doctor was negligent in his patient's treatment, or that he prescribed marijuana for improper reasons. As our summary of Dr. Chavez's declaration indicates, his declaration is neither speculative nor conclusory—it is based on his evaluation of the CURES records pertaining to prescriptions written by Dr. Montegut. Dr. Montegut has made no attempt to show that the prescriptions identified by Dr. Chavez as irregular were properly issued.

[11] In *Wood*, *supra*, 166 Cal.App.3d at pages 1142-1143, one doctor presented declarations from six local physicians that the Board's evidence did not necessarily indicate improper prescribing practices in the community, and the second doctor had referred hundreds of patients to a surgeon over the years, and the surgeon declared none of the patients had been prescribed excessive amounts of medication.

## DISPOSITION

The order granting the petition is affirmed.  Linda K. Whitney, as Executive Director of the Medical Board of California, is awarded costs on appeal.


KRIEGLER, J.


I concur:


TURNER, P. J.

Whitney v. Montegut
B241755
MOSK, J., Dissenting

I dissent because I believe that the Los Angeles County Superior Court did not have jurisdiction to order compliance with the investigative subpoenas duces tecum. Under Government Code section 11186,[1] jurisdiction to compel compliance with an investigative subpoena is vested in the superior court in: (1) "the county in which any hearing is held," (2) the county in which "any investigation is conducted under the direction of the head of a department," or (3) "the county in which testimony is designated to be given or documents or other items are designated to be produced." The trial court erred in finding jurisdiction in Los Angeles County Superior Court under the first and second bases for jurisdiction in section 11186. There is no substantial evidence supporting jurisdiction.

**A.    The "county in which any hearing is held"**

There was no jurisdiction in the Los Angeles County Superior Court under section 11186's hearing basis for jurisdiction because there was no hearing then taking place in Los Angeles County. The first basis for jurisdiction has two parts that require interpretation: (1) "any hearing" and (2) "is held." The term "any hearing" refers to the type of hearing, and not to the timing of a hearing. The term "is held" refers to the timing of "any hearing." The term "is held" is in the present tense. Thus, "is held" means a present hearing, and does not mean "was held"—a past hearing, or "will be held"—a future hearing. If the Legislature had intended to grant jurisdiction in connection with "any hearing," regardless of the hearing's timing, it would have so provided. Accordingly, the trial court's hearing-based justifications for finding jurisdiction in Los Angeles County Superior Court—(1) the hearing on the petition for defendant and appellant Dr. Walton Montegut's interim suspension "was held" in Los Angeles, and (2) if the Department files an accusation in the future, the hearing "will be held" in Los Angeles—were error.

---

[1]  All statutory citations are to the Government Code unless otherwise noted.

**B.      The county in which "any investigation is conducted under the direction of the head of a department"**

There was no jurisdiction in the Los Angeles County Superior Court under section 11186's investigation basis for jurisdiction because no investigation was conducted in Los Angeles County.  The conduct at issue in this case concerns Dr. Montegut's prescribing practices, which took place in Orange County.  Section 11186 establishes jurisdiction in the county in which "any investigation is conducted."  That an investigator—Deputy Attorney General Cindy Lopez—physically was in Los Angeles County when she investigated matters that occurred in Orange County does not mean that the investigation was conducted *in* Los Angeles County for purposes of establishing superior court jurisdiction under section 11186.[2]  Instead, Lopez's investigation of matters that occurred *in* Orange County *from* her Los Angeles County office was not an investigation that was conducted *in* Los Angeles County, but rather was an investigation that was conducted *in* Orange County.  Likewise, that Dr. Rick Chavez signed a declaration in Los Angeles County that expressed his opinion about Dr. Montegut's Orange County prescribing practices does not constitute an investigation in Los Angeles County.  Because an investigation was not conducted in Los Angeles County, the investigation basis for jurisdiction did not establish jurisdiction in the Los Angeles County Superior Court to order Dr. Montegut's compliance with the subpoenas.

---

[2]  As Linda Whitney, Executive Director of the Medical Board of California (Board), does not argue that the statement in her petition that "the Board's investigation is being conducted in Los Angeles County" was entitled to evidentiary weight because the petition to compel compliance with subpoenas pursuant to section 11187 was deemed verified by operation of Code of Civil Procedure section 446, that issue is not before this court.  I note, however, that because section 11187 does not require that petitions to compel compliance with subpoenas be verified (see *Murrieta Valley Unified School Dist. v. County of Riverside* (1991) 228 Cal.App.3d 1212, 1222 ["Verification is necessary only when called for by a particular statute"]), Code of Civil Procedure section 446 has no application here (see *Murrieta Valley Unified School Dist. v. County of Riverside, supra,* 228 Cal.App.3d at pp. 1222-1223 [pursuant to Code of Civil Procedure section 446, a school district was "exempt from the *verification requirement* of Code of Civil Procedure section 1086 and was not required to verify its petition"] (italics added)).

For the reasons stated above, because the Los Angeles Superior Court did not have jurisdiction to compel compliance with the subpoenas, I would reverse the trial court's order.



MOSK, J.