Filed 2/3/16; pub. order 2/26/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| DAVID R. FETT, M.D., | B262469 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS143716) |
| v. | |
| MEDICAL BOARD OF CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Ernest Hiroshige, Judge.  Affirmed.

Hooper, Lundy & Bookman and Linda Randlett Kollar for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Gloria L. Castro, Assistant Attorney General, Jose Guerrero and Steve Diehl, Deputy Attorneys General for Defendant and Respondent.

David R. Fett, M.D. (appellant) appeals from the trial court's order compelling compliance with an administrative investigative subpoena issued by the Medical Board of California (Board). The subpoena, issued in May 2013, sought complete, certified records of three of appellant's patients on the grounds that there was good cause to believe that appellant departed from the standard of care in connection with the treatment of those patients. Appellant's petitions to quash the subpoena were denied, and the Board's petition to compel compliance was granted in part, with the limitation that the records to be provided should be limited by time period.

Appellant appeals from the trial court's order, arguing: (1) the trial court erred when it found good cause for the Board's invasion of the patients' right to privacy of their medical records; (2) balancing of the parties' interests prohibits disclosure of the patients' medical records; and (3) the subpoena is impermissibly overbroad.

We conclude that the trial court committed no error in compelling partial compliance with the Board's investigative subpoena, therefore we affirm the order.

## FACTUAL BACKGROUND

On January 7, 2013, the Board received a complaint from Stacey Wagley (Ms. Wagley), Senior Investigator at OptumInsight.[1] The complaint alleged that the investigator had reason to suspect that appellant had billed UnitedHealthCare for services not rendered, had misrepresented services and falsified or altered documents. The investigator believed that based upon appellant's billing pattern, he had been paid funds to which he was not entitled.

Pursuant to Government Code section 11180 and Business & Professions Code sections 108 and 2220, the Board initiated an investigation of the allegations in the complaint. On April 2, 2013, the Board's investigator, Emilia Shenian (Investigator Shenian), received from Ms. Wagley a package containing her investigative materials, including the incomplete patient files appellant had sent to UnitedHealthCare.

---

[1] OptumInsight is a clearinghouse company which facilitates transfer of electronic transactions between insurance providers, physicians and health care facilities.

Investigator Shenian provided the records to the Board's consultant, Erich W. Pollak, M.D. Based on his review of the materials, Dr. Pollak concluded that there was good cause to believe that appellant may have departed from the standard of care in his treatment of the three patients. Dr. Pollak concluded that appellant may have engaged in the following departures from the standard of care: (1) failing to safeguard medical records; (2) failing to obtain signed consent; (3) operating without written consent; (4) failing to provide documentation requested by a third party carrier to justify billings made for services rendered; (5) altering documents related to operations; and (6) misrepresenting the complexity of procedures.

Dr. Pollak opined that it was necessary to obtain the complete and accurate medical records for these three patients in order to determine whether appellant had violated the standard of care in his treatment of the patients.

Based on Dr. Pollak's recommendation, on April 26, 2013, Investigator Shenian mailed requests for "Authorization for Release of Medical Information" to the three patients whose records were sought. The requests were accompanied by lawful notices to consumer, which included an advisement that a subpoena may be issued. Investigator Shenian did not receive a response from any of the patients. On May 7, 2013, Investigator Shenian prepared a subpoena duces tecum for service on appellant to obtain complete and certified copies of the three patients' records. The subpoena was served on appellant's office manager on May 21, 2013, and notices of subpoena were sent to the three patients on May 23, 2013.

In late May and early June, two of the patients wrote to appellant indicating they did not authorize the release of their medical records, and that they were happy with the quality of care provided by appellant. The third patient wrote that he had not received notice of a subpoena regarding his medical records, but that he did not want appellant to release any of his records without his permission.

On June 11, 2013, Investigator Shenian received a letter from appellant's attorney requesting a one-week extension of time to respond to the subpoena.

## PROCEDURAL HISTORY

3

On June 26, 2013, appellant filed petitions for orders quashing the subpoena and for the issuance of protective orders in Los Angeles Superior Court. Appellant filed a separate petition for each patient, but the petitions were deemed related. The Board filed oppositions to the petitions on October 24, 2013.

On October 18, 2013, the Board filed a separate petition to compel compliance with the subpoena. The matter was deemed related to the petitions filed by appellant, and the matters were consolidated.

At the hearing of the consolidated matters on January 22, 2015, the trial court issued a tentative decision granting the Board's petition to compel compliance and denying appellant's petitions to quash. After the hearing, the court took the matter under submission. On February 27, 2015, the trial court issued a ruling on the submitted matter adopting its tentative ruling. However, the trial court limited the scope of the subpoena as follows: all requested records of patient S.G. from May 27, 2009 through February 23, 2012; all requested records of patient J.G. from May 29, 2009 through March 15, 2012; and all requested records of patient B.P. from May 26, 2009 through February 23, 2012.

In its six-page written ruling, the trial court held that: (1) notice was adequate to the three patients, and they had sufficient time to object; (2) there was good cause for disclosure of the medical records; (3) the Board had authority to commence the investigation notwithstanding appellant's claim that the redisclosure of records by Ms. Wagley violated Civil Code section 56.26; (4) Dr. Pollak was qualified to provide the opinions that he provided in support of the Board's investigation; and (5) Dr. Pollak's conclusions were supported by fact and not speculative.

On March 5, 2015, appellant filed his notice of appeal.

## DISCUSSION

### I. Good cause

Appellant challenges the trial court's finding of good cause to invade the patients' private medical records. Appellant argues that the complaint from OptumInsight did not provide good cause, and that the illegal redisclosure of the partial patient records precluded the Board from launching the investigation and mandated denial of the Board's

4

petition to compel. Appellant also argues that Dr. Pollak relied on unreliable records and was not qualified to render an expert opinion on the standard of care for the medical procedures at issue because unlike appellant, Dr. Pollak is not an ophthalmic plastic surgeon.

The question of whether the Board established good cause to intrude on the patients' privacy rights is reviewed under the substantial evidence standard. (*Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 872-873.) However, the overall question of whether a subpoena meets the constitutional standards for enforcement is a question of law. (*Millan v. Restaurant Enterprises Group, Inc.* (1993) 14 Cal.App.4th 477, 485.)

Whether OptumInsight's rediscretion of medical records to the Board violated Civil Code section 56.26, and whether any such violation foreclosed use of the records, is reviewed de novo. (*People ex rel. Lockyer v. Shamrock Foods Co.* (2000) 24 Cal.4th 415, 432.)

### A. Relevant case law

Relevant case law assists our analysis of whether the evidence in this case was sufficient to support a finding of good cause for invading the patients' privacy rights. A brief discussion of the case law is thus warranted. The pertinent cases, also discussed in detail by the parties in their briefs, are *Whitney v. Montegut* (2014) 222 Cal.App.4th 906 (*Whitney*); *Bearman v. Superior Court* (2004) 117 Cal.App.4th 463 (*Bearman*); *Wood v. Superior Court* (1985) 166 Cal.App.3d 1138 (*Wood*); and *Board of Medical Quality Assurance v. Gherardini* (1979) 93 Cal.App.3d 669 (*Gherardini*).

In *Gherardini*, a hospital and its custodian of records appealed from an order granting the Division of Medical Quality of the Board of Medical Quality Assurance's petition to command the hospital to testify and produce hospital records and documents pertaining to five named patients. The investigator's declaration in support of the subpoena duces tecum stated: "'I am conducting an investigation involving an allegation of gross negligence and/or incompetence in the treatment of patients,'" and concluded that the medical records sought "'may offer evidence to substantiate the . . . allegations. . . .'" (*Gherardini, supra*, 93 Cal.App.3d at p. 673.) There was "no

5

specification of any charge by a fellow physician or member of the public," and "[n]o facts support[ed] the conclusionary statements." (*Ibid.*)

In *Gherardini*, the court discussed the meaning of a constitutional amendment added in November 1974 reflecting the "'public policy favoring the protection of privacy rights'" and expanding the privacy right in California. (*Gherardini, supra*, 93 Cal.App.3d at pp. 676-677.) The court concluded that the medical records sought fell "squarely within the protected ambit, the expressed objectives of article I, section 1." (*Id.* at p. 679.) The court concluded, "[w]hile the amendment does not prohibit all incursions into individual privacy, 'any such intervention must be justified by a compelling interest' [citation] and any statute authorizing invasion of such area of privacy must be subject to strict scrutiny." (*Ibid.*) The court concluded that the term "good cause" "'calls for a factual exposition of a reasonable ground for the sought order.' [Citation.] 'Good cause' which must be shown 'should be such that will satisfy an impartial tribunal that the request may be granted without abuse of the inherent right of an adversary.' [Citation.] To this principle we add: without abuse of a third party's constitutionally protected right of privacy." (*Id.* at p. 681.)

The *Gherardini* court concluded that the declaration provided in support of the intrusion into the patients' privacy rights was insufficient in that it "set[] forth no facts, no showing of relevance or materiality of the medical records of these five specified patients to the general charge of gross negligence and/or incompetence of the licensee-doctor." (*Gherardini, supra*, 93 Cal.App.3d at p. 681.) Under those facts, the order was reversed.

In *Wood*, a similar subpoena had been issued to obtain patient records without their consent in the course of an investigation of two doctors. The doctors were under investigation for a violation of a Health and Safety Code provision which provided that physicians may only prescribe controlled substances with a good faith belief that such prescription is required for treatment of the patient's ailments and only in a quantity and for a period of time that is necessary. (*Wood, supra*, 166 Cal.App.3d at p. 1141.) The declarations filed in support of the subpoenas referenced a review of pharmacy records

6

which showed a possibility of excessive prescriptions of controlled substances for both doctors. (*Id.* at pp. 1142-1143.) The experts declared that medical records should be obtained to determine if the patients had conditions warranting prescriptions for such a long duration and such large amounts of the controlled drugs. Both doctors refused to comply with the subpoenas. (*Ibid.*)

Under those circumstances, the court found the subpoenas were unsupported by good cause. While the government had a strong interest in regulating the prescriptions of controlled substances, the court noted that this interest must be balanced with the competing value of protection of privacy. Thus, the "omnibus demand" for the complete medical records of the patients was not sustainable. (*Wood, supra*, 166 Cal.App.3d at p. 1149.) In addition, the affidavits made conclusions that the prescriptions were suspicious without providing the court with any information regarding how often physicians generally prescribe such medications or any other information regarding how to gauge the likelihood that the records sought would reveal physician misconduct. (*Id.* at p. 1150.) Under the circumstances, the orders compelling compliance with the subpoenas were reversed. (*Ibid*.)

In *Bearman*, the Board filed a petition to compel a physician to provide all of one patient's medical records. The physician was under investigation for allegedly misprescribing medical marijuana. (*Bearman, supra*, 117 Cal.App.4th at p. 466.) Both the physician and the patient objected, and the trial court granted the Board's order that the physician comply with the subpoena. The Court of Appeal reversed, finding that the Board failed to demonstrate sufficient facts to support a finding of good cause.

The facts were as follows: patient Nathan had a letter from Dr. Bearman approving his use of cannabis for the pain and nausea of migraines. At a state recreation area, Nathan was stopped by park rangers and consented to a vehicle search. The rangers found two pipes with apparent marijuana residue, and Nathan admitted to having a small amount of marijuana in his possession. After reading the letter from Dr. Bearman and certifying that he was a licensed physician, the park rangers returned the pipes, marijuana, and letter to Nathan. Suspecting that the doctor was exceeding the scope of

his practice, one of the park rangers sent a copy of the letter to the Board asking for "'appropriate actions.'" (*Bearman, supra*, 117 Cal.App.4th at pp. 467-468.)

The Board wrote to Nathan that it was reviewing the quality of care provided by Dr. Bearman, and asked Nathan to release his medical records. Nathan refused, so the Board subpoenaed the records from Dr. Bearman. Dr. Bearman also refused to comply, and the trial court granted an order compelling compliance. (*Bearman, supra*, 117 Cal.App.4th at p. 468.) The Court of Appeal reversed finding a lack of good cause. The court found no evidence sufficient to show good cause to invade Nathan's right of privacy in his medical records. "The declarations included no *facts* even suggesting Dr. Bearman was negligent in Nathan's treatment, that he indiscriminately recommended marijuana, the circumstances under which marijuana may arguably be prescribed for migraines or attention deficit disorder, or that Dr. Bearman in any way violated [the law]." (*Id.* at p. 471.) The statements made by the park ranger and the investigative professionals were "nothing more than speculations, unsupported suspicions, and conclusory statements drawn solely from Dr. Bearman's letter to Nathan and the simple fact he recommended the use of marijuana." (*Ibid.*) The Board's desire to seek assurance that Dr. Bearman was not negligent and not violating the law was an insufficient reason to order production of the medical records. (*Ibid.*)

The most recent case, *Whitney*, involved a petition to compel a plastic surgeon to comply with investigational subpoenas regarding suspected prescription drug abuse. Specifically, it was suspected that Dr. Montegut was abusing drugs, prescribing to himself and over prescribing to patients. (*Whitney, supra*, 222 Cal.App.4th at p. 909.) The petition sought medical records of 10 patients treated by Dr. Montegut. The Court of Appeal rejected the doctor's argument that the subpoena did not set forth legally adequate cause for its enforcement. (*Id.* at p. 917.) The declaration provided by the Board's expert opined that it was unusual for someone of Dr. Montegut's specialty to prescribe such drugs in such high amounts. In addition, there were instances where patients were receiving the same prescription in one day, in the same quantities, at different pharmacies, and multiple family members were receiving the same prescriptions and

refilling before the due date. Such behavior was consistent with medication abuse, misuse, or diversion. (*Ibid.*)

Under these circumstances, the trial court affirmed the granting of the petition to compel, finding that the trial court "made a thorough analysis of the competing interests in this case" (*Whitney, supra*, 222 Cal.App.4th at p. 919) and that "the trial court's decisionmaking process in this case cannot be characterized as 'a rubber stamp' of the Board's actions." (*Id.* at p. 921.) The Board had pointed out specific instances of prescribing irregularities, which were sufficient for a finding of good cause. (*Id.* at p. 920.)

### B. *Substantial evidence supports the trial court's finding of good cause*

Similar to the situation in *Whitney*, here, the Board has provided specific instances of billing irregularities. Specifically, in her initial complaint, Ms. Wagley stated that in 246 line items, the documentation provided did not support the services billed. Overall, the documentation was considered invalid due to inconsistencies. In addition, there was no documentation to support 279 claim lines. While there may have been some legitimate services provided, "due to the discrepancy in provider signatures, patient signatures and general unreliability of the documentation" OptumInsight was unable to discern billable services from those that may be falsified. The provider failed to provide dates of service on some occasions, patient signatures and physician signatures were problematic, consents were not witnessed, and the procedures performed did not appear to have sufficient documentation that the procedures were reasonable and necessary. Operation reports appeared canned and odd spacing suggested alteration of the documents.

Upon his review of Ms. Wagley's complaint and the incomplete records provided to the Board by OptumInsight, the Board's expert Dr. Pollak opined that the production of only partial or inadequate medical records to the third party carrier is a departure from the standard of care. In addition, to allow records to be shredded or destroyed while the contents are material to the medical care of a patient is an extreme departure from the standard of care. Performing operations without signed consent, making untruthful

9

statements in records, and untruthfully documenting services rendered to patients are all departures from the standard of care. Dr. Pollak opined that there is good cause to believe that appellant departed from these standards of care.

Dr. Pollak stated that it appeared from the records that appellant failed to safeguard the medical records of the three patients at issue. In addition, he signed a consent attesting that all blanks were filled in, although the document did not contain a patient consent signature. It appeared that appellant operated without written consent on several occasions. Appellant departed from the standard of care by failing to provide documentation requested by the third party carrier to justify billings he made to the service provider for the three patients at issue. It appeared that he altered documents relating to operations. Specifically, he partially obliterated entries with new patient stickers and altered dates of service. In addition, it appeared that appellant misrepresented the complexity of procedures performed on several occasions, where operative notes were not consistent with intraoperative records.

Dr. Pollak concluded that the complete and accurate medical records of the three patients at issue were needed to answer several questions: whether records were missing, whether appellant operated without patient consent, whether appellant provided all documents in his possession to justify billings, whether there are complete operative reports for several operations, whether certain documents were altered, and whether the documentation supports the complexity of claimed operative services for these three patients on various dates.

As the trial court noted, the evidence presented is closer to that at issue in *Whitney* than *Bearman* or *Wood*: "Dr. Pollak sets forth a factual foundation for his opinion, including his review of the patients' medical records. Dr. Pollak cites dates and other details that could only be obtained from review of the medical records. . . . Based on his review of medical records of S.G., J.G. and B.P., Dr. Pollak has identified several specific instances in which Dr. Fett potentially departed from the standard of care in his treatment of these patients." The trial court also noted that "[a]lthough Dr. Fett presumably has access to the complete records, he has not submitted a declaration

10

himself or from an expert specifically responding to Dr. Pollak's interpretation of the medical records."

Appellant argues that Ms. Wagley's declaration is insufficient to support a finding of good cause, as it represents nothing more than the "conjecture" of an investigator similar to that found in *Gherardini*. We disagree. As set forth above, the investigator's declaration in *Gherardini* was insufficient because it "set[] forth no facts, no showing of relevance or materiality of the medical records of these five specified patients to the general charge of gross negligence and/or incompetence of the licensee-doctor." (*Gherardini, supra*, 93 Cal.App.3d at p. 681.) Such is not the case here, where the declaration and complaint set forth detailed facts to support the charge of negligence. In addition, the relevance and materiality of the medical records are described in detail. Ms. Wagley and Dr. Pollak provided detailed facts, not conclusory statements.

As observed in *Gherardini*, "an individual's right to privacy is not an absolute right; it may be outweighed by supervening public concerns; the State of California has a most legitimate interest in the quality of health and medical care received by its citizens; and an individual's medical records may be relevant and material in the furtherance of this legitimate state purpose; therefore, under some circumstances disclosure may permissibly be compelled." (*Gherardini, supra*, 93 Cal.App.3d at p. 679.) Here, the Board has set forth detailed facts showing good cause to believe that appellant has acted in a way that departs from the standard of care. Thus, there is good cause to order compliance with the subpoena.[2]

### C. Dr. Pollak's qualifications

Appellant argues that since Dr. Pollak is not an ophthalmic plastic surgeon, like appellant, Dr. Pollak's opinion is without merit. Appellant references his own expert,

---

[2] As the trial court noted, the parties dispute whether the Board is required to show a compelling state interest or a competing interest to overcome a patient's privacy right and compel disclosure of medical records. We need not address this question, as the state's interest in ensuring that the public receives medical care that conforms with the standard of care is a compelling interest. (*Gherardini, supra*, 93 Cal.App.3d at p. 679.)

11

Dr. Goldberg's declaration, in which Dr. Goldberg opined that Dr. Pollak's conclusions reflect a lack of understanding of the nuances of ophthalmic plastic surgery.

The trial court's determination that Dr. Pollak was a qualified expert is a discretionary ruling that will not be disturbed on appeal unless a clear abuse of discretion is shown. (*Evans v. Ohanesian* (1974) 39 Cal.App.3d 121, 127 ["it is axiomatic that the qualification of an expert is ordinarily a matter addressed to the sound discretion of the trial court, and its ruling will not be disturbed on appeal unless a clear abuse of discretion is shown"].)

The trial court considered appellant's argument that Dr. Pollak's declaration should be disregarded because Dr. Pollak is not an ophthalmic plastic surgeon. The trial court concluded:

> "Although some portions of Dr. Pollak's declaration would have been stronger if supported by expertise in [appellant's] medical specialty, much of his declaration focuses on alleged departures from the standard of care applicable to all surgeons. For instance, Dr. Pollak contends that [appellant] operated without complete written consents and failed to provide documentation to justify his billings to a third party carrier. This alleged misconduct is not specific to [appellant's] medical specialty."

We find that the trial court's determination was within the bounds of its discretion. It is not critical whether a medical expert is a specialist. (*Evans v. Ohanesian, supra*, 39 Cal.App.3d at pp. 128-129.) "Where a duly licensed and practicing physician has gained knowledge of the standard of care applicable to a specialty in which he is not directly engaged but as to which he has an opinion based on education, experience, observation or association with that specialty, his opinion is competent. [Citation.]" (*Id.* at p. 128.) Thus, "it is immaterial whether [an expert] is a . . . specialist providing he has knowledge of the standard of care in any given field." (*Id.* at pp. 128-129).

Dr. Pollak's declaration establishes that he has held a physician's and a surgeon's certificate from the Board since 1970. He is a published author, college professor, and as part of his obligations as chairman or member of hospital governing boards, has reviewed more than 4,000 medical and surgical cases. Dr. Pollak declared that he was familiar

with the standard of practice in the State of California and was competent to testify on the subject.  As explained by the trial court, many of his opinions were not specific to appellant's specialty as an ophthalmic surgeon.  We find no abuse of discretion in the trial court's determination that Dr. Pollak was qualified to render an expert opinion in this matter.

## II.  Redisclosure of medical records

Civil Code section 56.26 provides:

> "No person or entity engaged in the business of furnishing administrative services to programs that provide payment for health care services shall knowingly use, disclose, or permit its employees or agents to use or disclose medical information possessed in connection with performing administrative functions for a program, except as reasonably necessary in connection with the administration or maintenance of the program, or as required by law, or with an authorization."

Appellant states it is undisputed that Ms. Wagley violated Civil Code section 56.26.  However, no such finding was made by the trial court.  Instead, the trial court found that it was not convinced that any exclusionary rule applies "even if OptumInsight may have improperly disclosed the medical records."  The court concluded: "In balance, the Court is not persuaded that Medical Board lacked authority to commence an investigation based on the uncertified medical records, even if such records were improperly disclosed by a third party."

Neither party provides detailed argument regarding the alleged impropriety of Ms. Wagley's redisclosure of the records to the Board.  Instead, they skip to the question of whether such an improper redisclosure mandates that the wrongly disclosed records not be used by the Board to commence an investigation.  Therefore, we focus our discussion on this same question.

Both parties agree that the exclusionary rule does not apply in this case.  Appellant explains that application of the exclusionary rule depends on the existence of a search and seizure that violates the protections of the Fourth Amendment.  (*Conservatorship of*

13

*Susan T.* (1994) 8 Cal.4th 1005, 1012.) There is no evidence of an unconstitutional search and seizure in this case.

However, appellant argues that the plain language of Civil Code section 56.26 forecloses the Board from using the documents as a basis to launch its investigation. Appellant cites no law in support of this proposition. The statute itself provides no such exclusionary remedy. Instead, the statute merely provides that a qualifying disclosure constitutes a violation of the law. The remedy for such a disclosure is found in Civil Code section 56.35, which provides: "In addition to other remedies available at law, a patient whose medical information has been used or disclosed in violation of . . . Section 56.26 and who has sustained economic loss or personal injury therefrom may recover compensatory damages, punitive damages not to exceed three thousand dollars ($3,000), attorneys' fees not to exceed one thousand dollars ($1,000), and the costs of litigation." In addition, Civil Code section 56.36 provides that any violation "of the provisions of this part that results in economic loss or personal injury to a patient is punishable as a misdemeanor." (Civ. Code, § 56.36, subd. (a).)

Appellant points to no law indicating that patient records redisclosed in violation of Civil Code section 56.26 may not be used to launch an investigation by the Board. In fact, case law suggests that improperly obtained evidence may be used in administrative investigations. For example, in *Dept. of Transportation v. State Personnel Bd.* (2009) 178 Cal.App.4th 568, this court held that the exclusionary rule does not apply in civil disciplinary proceedings to bar introduction of incriminating evidence seized from the appellant's car and his pockets. And in *Pating v. Board of Medical Quality Assurance* (1982) 130 Cal.App.3d 608, the court stated: "[T]he exclusionary rule where considered has generally been held inapplicable in administrative proceedings which are characterized as civil rather than criminal in nature." (*Id.* at p. 623.)

Appellant cites *Pillsbury, Madison & Sutro v. Schectman* (1997) 55 Cal.App.4th 1279 (*Pillsbury*) for the proposition that "[a]ny litigant or potential litigant who converts, interdicts or otherwise purloins documents in the pursuit of litigation outside the legal process does so without the general protections afforded by the laws of discovery and

14

risks being found to have violated protected rights." (*Id.* at 1289.) In *Pillsbury*, the trial court granted a preliminary injunction requiring an individual to return confidential personnel documents to Pillsbury which the individual removed from Pillsbury's offices without its consent. The individual appealed, and the Court of Appeal affirmed, finding that the trial court did not abuse its discretion in granting the preliminary injunction and stating its "agreement with those courts which have refused to permit 'self-help' discovery which is otherwise violative of ownership or privacy interests and unjustified by any exception to the jurisdiction of the courts to administer the orderly resolution of disputes." (*Ibid.*) This matter is distinguishable, as it does not involve self-help discovery conducted outside of court proceedings, and does not involve a preliminary injunction seeking return of confidential documents taken without consent.

In sum, appellant has failed to convince this court that, if the evidence was obtained in violation of Civil Code section 56.26, the Board was not permitted to use it in the investigation.

## III. Balancing of interests

Citing *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 37, appellant states that when an individual's privacy rights are at issue, the court is required to weigh the government's countervailing interests against these important individual rights. Appellant argues that the trial court failed to engage in the required balancing of the interests that are at issue. We disagree. While the trial court may not have specifically stated it was engaging in a balancing test, the long discussion of good cause shows careful consideration of the patients' right to privacy versus the state's interest in safeguarding its citizens from negligent medical care.

Appellant further argues that the strength of the patients' privacy interests strongly outweigh the Board's countervailing interests. Appellant discusses the history of the Health Insurance Portability and Accountability Act (HIPAA) leading up to the requirement that any covered entity must inform the patient that his or her records are being sought. The Board provided such notice in this case. As set forth above, the state has a compelling interest in ensuring that the medical care provided by Board certified

15

doctors conforms to the standard of care.  In this case, the trial court did not err in concluding that this compelling interest of protecting the public outweighed the patients' privacy interests.[3]

## IV.  Scope of subpoena

Relying exclusively on *Wood* and *Bearman*, appellant next argues that the subpoena is impermissibly overbroad.  Appellant points out that in both *Wood* and *Bearman*, the courts of appeal determined that a subpoena for all records was unconstitutionally overbroad.  While acknowledging that the trial court narrowed the scope of the subpoena by limiting the period of time, appellant argues that this modification is insufficient.  Appellant states that pursuant to *Wood*, there must be "root facts" presented to justify the request for complete records, rather than just suspicion and speculation.  (*Wood, supra*, 166 Cal.App.3d at p. 1138, 1150.)

As set forth above, this case is distinguishable from *Wood*.  In contrast to the situation present in *Wood*, here the Board has set forth detailed facts describing the basis for its good cause to believe that appellant has departed from the standard of care.  In addition, in contrast to the situation present in *Wood*, the Board's expert presented evidence as to the appropriate standard of care and showed how appellant's acts departed from that standard.

Furthermore, appellant presents no suggestions as to how the subpoena could be further modified to protect the patients' privacy.  One of the problems alleged with appellant's recordkeeping is destruction and alteration of records.  Thus, it appears that a review of the complete records for the relevant time frame is necessary to determine if, in

---

[3]     Appellant argues that courts must apply "strict scrutiny" to serious intrusions of privacy interests, citing *Hill, supra*, 7 Cal.4th at page 30.  The cited text says no such thing.  Instead, the high court explained, "[i]n privacy cases involving informational interests, the federal courts have generally applied balancing tests that avoid rigid 'compelling interest' or 'strict scrutiny' formulations."  The court further noted, "the Supreme Court has not endorsed strict scrutiny for all privacy-based interests at all conceivable levels of intrusion."  (*Id*. at p. 31.)  Appellant has failed to cite law mandating a strict scrutiny analysis in the circumstances present here, therefore we reject this argument.

fact, records were lost or destroyed. Under the circumstances, we find that the trial court did not err in failing to modify the subpoena in more ways than it already did in applying time restrictions.[4]

## DISPOSITION

The order is affirmed. Respondent is awarded costs of appeal.


_____, J.
CHAVEZ


We concur:

_____, P. J.
BOREN

_____, J.
HOFFSTADT

---

[4]    Appellant provides additional argument that the Board cannot provide the patients with protection of their privacy interests. Appellant fails to articulate any alleged error made by the trial court in this regard. Any request for redaction or other action to protect the identities of the patients in future proceedings should be directed to the appropriate tribunal.

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| DAVID R. FETT, M.D., | B262469 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS143716) |
| v. | |
| MEDICAL BOARD OF CALIFORNIA, | ORDER FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:*

The opinion in the above entitled matter filed on February 3, 2016, was not certified for publication.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

*BOREN, P. J., CHAVEZ, J., HOFFSTADT, J.

18